**ORTHO PHARMACEUTICAL CORPORATION and Johnson & Johnson (Hong Kong) Ltd., Plaintiffs–Appellees,**

v.

**SONA DISTRIBUTORS and Elmcrest Trading, Ltd., Defendants–Appellants.**

No. 87–5175.

United States Court of Appeals, Eleventh Circuit.

June 27, 1988.

---

Gilbert Lee Sandler, Sandler & Travis, P.A., Miami, Fla., for defendants-appellants.

Benedict P. Kuehne, Bierman, Sonnett, Shohat & Sale, Miami, Fla., William E. Wallace, III, Howrey & Simon, Kevin P. O'Rourke, Dennis J. Scott, Washington, D.C., for Ortho Pharmaceutical, et al.

Before HATCHETT and EDMONDSON, Circuit Judges, and MARKEY[*], Chief Circuit Judge.

[*] Honorable Howard T. Markey, Chief Circuit Judge for the Federal Circuit, sitting by designation.

**EDMONDSON, Circuit Judge:**

In this appeal, defendants-appellants Sona Distributors, Inc. ("Sona") and Elmcrest Trading, Ltd. ("Elmcrest"), along with their attorneys, seek relief from the district court's imposition of pre-trial Rule 11 sanctions against defendants and their attorneys, jointly and severally, payable immediately. Because we hold that the district court did not abuse its discretion in imposing these sanctions, we affirm the district court's order, 117 F.R.D. 170.

The underlying dispute involves an alleged breach of contract. Ortho Pharmaceutical Corp. ("Ortho") and Johnson & Johnson (Hong Kong) Ltd. arranged to sell drugs to defendants for resale only in the People's Republic of China. Defendants allegedly marketed the drugs for resale in the United States, in breach of their agreement with Ortho.

After Ortho filed a diversity suit in federal district court in Florida, Elmcrest moved to dismiss for lack of personal jurisdiction. Plaintiffs-appellees incurred tens of thousands of dollars in attorney fees and costs in defending against this motion for dismissal. Elmcrest eventually dropped this defense. In granting plaintiffs' subsequent motion for sanctions, the district court determined that Elmcrest's request for dismissal was "incompetent at its inception": because the shareholders and directors of Elmcrest, a Hong Kong company, and of Sona, a company doing business in Florida, were almost identical and because the business of the two companies was closely intertwined, Elmcrest could ground no reasonable, good faith request to dismiss on the idea that it was an independent entity lacking the requisite personal ties to Florida. The district court therefore granted Ortho's motion for Rule 11 sanctions, holding defendants-appellants and their attorneys jointly and severally liable for fees and costs and finding payment appropriate "now and not at the conclusion of trial." In a subsequent order setting the actual dollar amount of the

sanctions, the district court directed appellants and their attorneys "to pay to [Ortho] the amount of $35,851.55 *forthwith*." (emphasis added). Sona and Elmcrest have filed this appeal to challenge the sanctions.

*Jurisdiction*

Before reaching the merits of appellants' arguments, we must determine whether this court has jurisdiction to hear this appeal. Under 28 U.S.C. sec. 1291, "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ...." A final order concludes the litigation on the merits; the trial court has no more to do but execute the judgment. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Jacksonville Shipyards, Inc. v. Estate of Verderane*, 729 F.2d 726, 727 n. 1 (11th Cir.1984). The order under appeal is clearly outside the ambit of section 1291: at the time the order issued, the case was still pending before the district court and had not even gone to trial.

■ Appellants urge that the district court's assessment of sanctions payable immediately against a party and that party's attorney falls within the doctrine of practical finality, *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), and also within the collateral order exception to the final judgment rule, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We agree. When a Rule 11 sanctions directs a non-party (jointly and severally with parties to the action or alone) to pay immediately—that is, before entry of final judgment—significant attorney fees and costs, this court has jurisdiction to hear immediate appeal of the sanction order.

■ Under the particular facts of this case, defendants successfully plead their case under two exceptions to the finality rule. Under the doctrine of practical finality, announced in *Forgay*, review of an order before entry of judgment in the underlying case is permissible whenever the order directs "immediate delivery of physical property and subjects the losing party to irreparable harm" if review is delayed until the case is concluded. *In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir.1986).

■ Under the collateral order doctrine, an order resolving issues independent and easily separable from other claims in a pending lawsuit can be appealed prior to entry of final judgment. To fall within the collateral order exception, an order must satisfy three criteria under *Cohen*. It must: 1) conclusively determine the disputed question; 2) resolve an important issue completely separate from the merits of the action; and 3) be effectively unreviewable on appeal from a final judgment. *See Cohen*, 337 U.S. at 545-47, 69 S.Ct. 1225-26; *United States v. One Parcel of Real Property*, 767 F.2d 1495, 1497 (11th Cir.1985).

■ We note that the district court's order meets all three of the *Cohen* criteria. The order conclusively resolves the matter under dispute: the appropriateness of sanctions because of Elmcrest's conduct in filing a groundless dismissal motion. Sanctions imposed during the pendency of a case, but not made immediately payable, may well later be rescinded by the court. For this reason some courts have refused to view the mere imposition of sanctions as a final order. *See generally Appeal of Licht & Semonoff*, 796 F.2d 564, 570 (1st Cir.1986) (noting that a court may rescind a sanction as part of a settlement agreement or rescind or modify the sanction after verdict); *Kordich v. Marine Clerks Ass'n*, 715 F.2d 1392, 1393 n. 2 (9th Cir.1983) (stating that sanctions "may be merged into or modified by the final judgment"). Nevertheless, when a district court makes such sanctions subject to immediate execution, the court makes clear that the decision is in no way tentative. Because of the provision making the sanctions payable "forthwith," we determine that the order in this case conclusively settles the question.

The issue in this case—the imposition of sanctions because of the filing of a frivolous motion, now abandoned—is also separate from the merits of the case as a whole. One indication of the importance of this

issue is the size of sanctions imposed—over $35,000. We do not suggest that the monetary amount involved is the sole measure of the importance of a case or of an issue. It is, however, certainly one practical indication of the significance of a matter in dispute. Thus, not all immediately payable sanctions imposed under Rule 11 (or other rules) will be appealable under the collateral order exception. While the issue may be separable and discrete from the central controversy of the case, the small size of the sanction will not meet the "significant issue" component of the second criterion under *Cohen.* In the case before us, however, the sanctions imposed are not nominal. We thus find that the first two criteria under *Cohen* are met.

Courts that have confronted the question of whether a non-party may take immediate appeal of a sanction order have parted ways in their application of the third *Cohen* criterion to this sort of situation. Some have strictly interpreted the necessity of showing unreviewability in a delayed appeal and have found that the third *Cohen* criterion is not usually met. *See, e.g. Click v. Abilene Nat'l Bank,* 822 F.2d 544, 545 (5th Cir.1987) (monetary sanctions assessed against attorney not reviewable under *Cohen* because they could be appealed along with appeal of final judgment).[1] Courts, including this circuit, have, however, recognized that "the statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation." *In re Martin Bros. Toolmakers, Inc.,* 796 F.2d at 1437. Consequently, some courts perceive and give great weight to the possibility that a non-party may be unable to obtain review from a final judgment. *See Robinson v. Tanner,* 798 F.2d 1378, 1381 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987); *Sanko Steamship Co., Ltd. v. Galin,* 835 F.2d 51, 53 (2d Cir.1987); *Frazier v. Cast,* 771 F.2d 259, 262 (7th Cir.1985); *cf. Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 538–39 (3d Cir.1985) (order assessing sanction against party's *former* counsel in case is effectively unreviewable

on appeal). *Contra Licht & Semonoff,* 796 F.2d at 572 ("We see no reason why an attorney should not be allowed to appeal a sanction order when the main case is terminated without an appeal.") We agree that the involvement of a non-party raises special considerations.

There has also been a recognition that immediate payment and delayed reviewability may create serious liquidity problems for those against whom sanctions have been assessed, financial problems that cannot be cured by ultimate vindication on the issue and a later return of the money. *Cf. Robinson v. Tanner,* 798 F.2d at 1381 (noting that a party seeking review of a $200 sanction had not alleged that paying the sum would cause him irreparable injury); *Mulay Plastics, Inc. v. Grand Trunk Western R. Co.,* 742 F.2d 369, 370 (7th Cir.1984) (in case involving sanctions imposed on party, implicitly suggesting that a sanction causing a liquidity crisis for the party obliged to pay might result in a finding of reviewability under *Cohen*), *cert. denied,* 470 U.S. 1037, 105 S.Ct. 1409, 84 L.Ed.2d 798 (1985).

Also, when the party receiving the money is itself in a precarious financial position, the party that has paid the sanctions and is later determined to have been in the right may not be able to recover the monies paid. *Cf. Robinson v. Tanner,* 798 F.2d at 1381 (discussing *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118 (5th Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), where dismissal order against one of several defendants was appealable in order to protect funds of dismissed party which might become subject to other intervening claims); *Mulay Plastics, Inc. v. Grand Trunk Western R. Co.,* 742 F.2d at 370 (implying that possibility that party benefitting from sanction award might not be able to return it, should an appellate court reverse the trial court's order, militates in favor of immediate appeal of the award under *Cohen*).

■ In the present appeal, appellants and their counsel argue several reasons for effective unreviewability if review awaits

---

1. The *Click* opinion gives no indication that the sanctions were subject to immediate execution.

completion of the litigation. They note that if payment is not made, it is possible that property could be seized and sold in satisfaction of the money owed. Even if appellants and counsel prevailed in a future appeal on the question of sanctions, any such property seized and disposed of most likely could not be returned to appellants. Appellants' counsel also notes that defendant-appellant Sona filed a Chapter 11 bankruptcy petition in July 1987; different counsel represent Sona in the bankruptcy matter. Elmcrest itself may not be able to satisfy the sanction order itself. It is thus very possible that plaintiffs will look only to appellants' counsel to satisfy—in the fastest and easiest manner—the sanction award. For these reasons we conclude that appellants and their counsel have successfully made a showing of effective unreviewability.[2]

■ As we have previously noted, appellants also advance a successful argument under the doctrine of practical finality. Some of the same facts by which appellants' counsel (and appellants) make out a case for immediate appeal of the district court's sanction order as a collateral order exception—the considerable size of the sanction and its immediate payability—also serve to bring the order in this case under the practical finality exception. When a decree "directs [an individual] to pay a certain sum of money" and the decree can be "carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal ...." *Forgay v. Conrad*, 47 U.S. (6 How.) at 204; *see also In re Regency Woods Apartments, Ltd.*, 686 F.2d 899, 902–03 (11th Cir.1982) (in bankruptcy context, "[t]he grant of relief from a stay and the requirement of cash payments to provide adequate protection may require the immediate delivery of property, and may subject the losing party to irreparable injury if appellate review is delayed; therefore, the *Forgay-Conrad* rule appears to apply.").[3]

In *Robinson v. Tanner, supra,* this court held that *a party* in a civil rights case could not immediately appeal the imposition of discovery sanctions. The *Robinson* court did indicate, however, upon making a showing that a) there would be no effective appeal from final judgment; or b) that paying the sanction imposed would cause irreparable harm; or c) that the sanction might involve funds that would be irretrievably lost, a party upon whom sanctions were imposed might be able to obtain review of the sanctions prior to entry of final judgment in the case. *See id.* at 1381.

In the present case, appellants' counsel, against whom sanctions were imposed jointly and severally with their clients, have made just the sort of showing contemplated by *Robinson.* Because they are non-parties—that is, without absolute control over the progress of the case and subject to dismissal from any role in the case should the client decide to change counsel —we determine that their right to immediate appeal is at least as well-founded, if not more so, than the right of a party facing a sanction and making those arguments.

■ In concluding, we observe that while in the case of motions, sanctions will normally be imposed when the motion is

2. We emphasize that it is the imposition of immediately payable sanctions against a non-party—appellants' attorneys—that is the key to our decision today. While it is probably possible for a party against whom immediately payable sanctions have been imposed to make out a case for appeal under the collateral order doctrine, it would of course be much more difficult for a *party* to meet the "effective unreviewability" criterion. A party, having the ultimate right to decide whether and how to proceed in its case, could not claim that its right to appeal a sanction after final judgment would evaporate through no fault or action of its own.

3. Under the practical finality doctrine, an individual must show irreparable harm if not allowed immediate appeal. *See In re Martin Bros. Toolmakers, Inc.,* 796 F.2d at 1437. Just as only a nominal or small money sanction will not meet the second prong of the *Cohen* test, a relatively insignificant sanction normally will not result in irreparable harm for purposes of the test under the practical finality doctrine. Thus a person—party or non-party—against whom such a sanction is imposed normally will be unable to bring its appeal within the *Cohen* or *Forgay* exceptions. In such an event, any review must necessarily await entry of final judgment in the case.

decided or shortly thereafter,[4] Rule 11 and its notes do not speak specifically to when such sanctions normally will be payable. Just as Rule 11 leaves the sanction (and presumably, the time of its payment) to the discretion of the district judge, our decision today also allows the district judge to control the reviewability of a sanction. If a money sanction against a non-party is not immediately payable, neither will it normally be immediately reviewable.

### Sanctions

Having established that this court properly has jurisdiction over appeal of the district court's sanction order, we turn to the merits of the case. Rule 11 provides in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law .... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include ... a reasonable attorney's fees.

This rule incorporates an objective standard by "'stress[ing] the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.'" *Donaldson v. Clark*, 819 F.2d 1551, 1555–56 (11th Cir.1987) (*en banc*) (quoting Advisory Committee Note to Rule 11, as amended in 1983).

■ The prefiling inquiry of Elmcrest's counsel was unreasonable under the circumstances. To excuse its groundless motion to dismiss, counsel notes that the motion was filed a scant twenty-three days after service of Ortho's complaint. Counsel also notes that during this same three-week period it also had to address applications for a temporary restraining order and a preliminary injunction and to deal with expedited discovery. In addition, counsel observes that the key events of the case had occurred in Hong Kong, making investigation more difficult.

We cannot help but remark that these time constraints of which counsel complains were of its own making. Counsel moved for no extension of time to investigate further whether the jurisdictional argument for dismissal was well-founded, although counsel knew of the existence of documents that would shed light on the problem. Only when court order forced the production of these documents did counsel decide to abandon the jurisdictional argument, after Ortho had expended significant resources to oppose the motion. Under these circumstances, the district court did not abuse its discretion in awarding Rule 11 sanctions.

■ We must also determine whether the district court acted within its discretion in formulating the sanctions imposed. *See Donaldson*, 819 F.2d at 1556 ("Rule 11 itself gives courts discretion to fashion sanctions to fit specific cases ....").

The district court awarded Ortho $35,-851.55 in attorney fees and costs, incurred from the time Elmcrest filed its motion to dismiss in January 1986 through August 1, 1986, the date Ortho received appellants' July 15, 1986 letter stating that Elmcrest was officially dropping the jurisdictional challenge. Appellants argue that if fees and costs are to be awarded, such fees and costs should be calculated only through April 23, 1986, when the district court dis-

---

4. With regard to Fed.R.Civ.Proc. 11, the 1983 Notes of the Advisory Committee on Rules read in pertinent part:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.

missed Elmcrest's motion for dismissal as being prematurely filed.

In view of the fact that Elmcrest's motion was dismissed without prejudice and could have been reasserted at a subsequent date, the district court properly could decide to award fees that Ortho incurred up until such date as Elmcrest officially dropped this defense. Similarly the district court did not abuse its discretion in awarding Ortho $8,000 for discovery abuses traceable to the Rule 11 violation.[5]

For the foregoing reasons, we AFFIRM the district court's sanction order.

---

5. We note that the district court did not award Ortho the total amount it sought in fees and costs. Ortho initially sought a fees and costs award of $46,330.66.